# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

| | |
|---|---|
| In the matter of: ) <br> ) <br> KEVIN JAYNES ) <br> CHERRI JAYNES ) <br> (Chapter 7 Case Number <u>11-41665</u>) ) <br> ) <br> *Debtors* ) <br> ) <br> ) <br> ) <br> SMITH WAREHOUSE HOLDINGS, INC. ) <br> ) <br> *Plaintiff* ) <br> ) <br> ) <br> v. ) <br> ) <br> KEVIN JAYNES ) <br> CHERRI JAYNES ) <br> ) <br> *Defendants* ) | Adversary Proceeding <br><br> Number <u>11-4077</u> <br><br><br> **FILED** <br> Lucinda B. Rauback, Clerk <br> United States Bankruptcy Court <br> Savannah, Georgia <br> By lbarnard at 2:40 pm, Jan 16, 2013 |

## OPINION AND ORDER ON DEBTORS' MOTION FOR SUMMARY JUDGMENT

Debtors filed their Chapter 7 case on August 13, 2011. Plaintiff Smith Warehouse Holdings, Inc. ("SWH") is creditor in the case. SWH initiated this adversary proceeding on November 14, 2011, objecting to discharge and seeking a determination of dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(6) and 727. Currently pending before this Court is Debtors' Motion for Summary Judgment, which was filed on August 20,

AO 72A
(Rev. 8/82)

2012. A.P. Dckt. No. 25.[1] Debtors also filed a Brief in Support of their Motion for Summary Judgment (A.P. Dckt. No. 26), and a Statement of Material Facts. A.P. Dckt. No. 27. In response to Debtors' Motion, SWH filed its Brief in Opposition to Debtors' Motion for Summary Judgment (A.P. Dckt. No. 45) and responded to Debtors' Statement of Material Facts on September 10, 2012. A.P. Dckt. No. 46. The parties have stated that a ruling on Debtors' Motion for Summary Judgment prior to trial would be preferable, and so the Court will now rule on that motion. A.P. Dckt. No. 44 at 6. Having reviewed the record in this matter, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtors Kevin and Cherri Jaynes owned 100% of the stock of Arrow Van Lines, Inc. ("Arrow of South Carolina"), a South Carolina moving and storage business. The Plaintiff corporation, SWH, is a landholder that rents land and warehouse space. H. Smith, Sr. Deposition, A.P. Dckt. No. 31 at 11-12. SWH was formerly in the moving and storage business and was previously known as Arrow Van Lines, Inc., a Georgia Corporation ("Arrow of Georgia"). *Id.* at 7. Debtor husband, Kevin Jaynes, worked for Arrow of Georgia for several years prior to 2004. K. Jaynes Deposition, A.P. Dckt. No. 48 at 6.

Newly-formed Arrow of South Carolina purchased the assets of Arrow of Georgia in January 2004 for the purchase price of $370,000.00. Debtor's Brief, A.P. Dckt.

---

[1] For this Order, citations to the main bankruptcy case [11-41665] will appear as "Dckt. No. ___"; citations to SWH's Adversary Proceeding [11-4077] will appear as "A.P. Dckt. No. ___".

No. 26 at 2; A.P. Dckt. No. 34. The Asset Purchase Agreement (A.P. Dckt. No. 36) between the parties was dated December 31, 2003, and the Security Agreement giving SWH a security interest in all the assets conveyed was dated January 1, 2004. A.P. Dckt. No. 38. At the time of the sale, Henry Smith, Sr. was the president of Arrow of Georgia, and Kevin Jaynes was sixty-percent owner of Arrow of South Carolina. H. Smith, Sr. Deposition, A.P. Dckt. No. 31 at 7-10; K. Jaynes Affidavit, A.P. Dckt. No. 29 at 1. Neither party perfected SWH's security interest. SWH's Brief, A.P. Dckt. No. 45. No UCC filings were made as to the assets transferred. H. Smith, Sr. Deposition, A.P. Dckt. No. 31 at 37-38. Contemporaneously with the execution of the Asset Purchase Agreement, Arrow of Georgia leased a portion of commercial land, warehouse space, and a related office building located at 200A Purrysburg Road and property located at 102 Randolph Street to Arrow of South Carolina. Arrow of South Carolina Lease, A.P. Dckt. No. 39.

On February 15, 2006, Donna Smith, daughter of Henry Smith, Sr., sold A-1 Moving Systems, Inc., a Georgia corporation ("A-1 of Georgia") and all of its assets to A-1 Moving Systems, Inc., a South Carolina corporation ("A-1 of South Carolina"). A.P. Dckt. No. 37. Ken Driggers and Debtor wife, Cherri Jaynes, owned A-1 of South Carolina and were the signatories on the promissory note and security agreement with Donna Smith. A.P. Dckt. Nos. 37, 38. Cherri Jaynes owned the majority interest of A-1 of South Carolina. K. Jaynes Deposition, A.P. Dckt. No. 48 at 29. SWH leased property located at 200B Purrysburg Road to A-1 of South Carolina on February 15, 2006. A-1 of South Carolina Lease, A.P. Dckt. No. 40. By 2008, Kevin Jaynes had effectively merged the operations of Arrow of

South Carolina and A-1 of South Carolina. K. Jaynes Affidavit, A.P. Dckt. No. 29. Both A-1 of South Carolina and Arrow of South Carolina primarily conducted their business on the Purrysburg Road properties. Debtor's Brief, A.P. Dckt. No. 26 at 4.

SWH holds a claim against Debtors in the amount of $149,943.53, exclusive of late charges, accrued interest or attorney's fees. Complaint, A.P. Dckt. No. 1. The operating assets SWH sold to Arrow of South Carolina included moving trucks and other equipment, as well as approximately $180,000.00 cash. Proposed Pre-Trial Order, A.P. Dckt. No. 44 at 3. Arrow of South Carolina replaced many of these purchased assets, and SWH contends that its security interest extended to those replacement assets. *Id.*

Arrow of South Carolina first defaulted on its obligations under the Note in 2008. D. Smith Deposition, A.P. Dckt. No. 32 at 12. SWH did not receive a payment on the Note after July 2010. *Id.* at 14. Debtors attempted to renegotiate the Note, but were unsuccessful. H. Smith, Sr. Deposition, A.P. Dckt. No. 31 at 59-61. SWH attempted to evict Debtors from the Purrysburg Road Properties in early 2011. D. Smith Deposition, A.P. Dckt. No. 32 at 14, 37-39. Debtors contend that this eviction was effectuated despite assurances to the contrary and "completed the collapse of both companies and gave no hope for their future resurrection." Debtor's Brief, A.P. Dckt. No. 26 at 4-5.

On or about April 1, 2011, Kevin Jaynes transferred the assets of Arrow of South Carolina to Port City Logistics. K. Jaynes Deposition, A.P. Dckt. No. 48 at 23. Port

City Logistics hired Kevin Jaynes as a contractor. *Id.* at 36. Concurrently with the sale of the assets of Arrow of South Carolina, Kevin Jaynes also sold the assets of Arrow of South Carolina's affiliate, A-1 Moving Systems, to Port City Logistics. *Id.* at 31-32. Kevin Jaynes signed the Bill of Sale for this transfer on behalf of Arrow of South Carolina and as an officer of A-1 Moving Systems. *Id.* at 28, 30. In exchange for the transfer of these assets, Port City Logistics provided Debtors $90,000.00 in "funds." *Id.* at 18-19. Debtors assert that they had authority to make this sale, while SWH contends that the sale of its collateral was a willful and malicious injury to SWH.

Debtors filed their Chapter 7 petition on August 13, 2011. Debtors' original schedules (Dckt. No. 1) included several errors, which were corrected when Debtors amended their schedules on May 16, 2012. Dckt. No. 54. SWH alleges that Debtors failed to disclose ownership of (1) a Dodge Challenger automobile, (2) a 2006 BMW convertible, (3) a 5th wheel camper, (4) a golf cart, (5) one or more ATVs, (6) dirt bikes, (7) a boat, motor, and trailer, (8) multiple bank accounts at the Savannah Bank, and (9) a Harley Davidson motorcycle. Complaint, A.P. Dckt. No. 1.

SWH later identified four additional bank accounts allegedly held by Debtors or their companies either on the petition date or within one year before that were not disclosed in Debtors' original or amended schedules. SWH's Response to Statement of Material Facts, A.P. Dckt. No. 46 at 4. SWH likewise stated that Debtors' Means Test was never amended, but that Debtors received $151,567.29 in the six months preceding

bankruptcy from various sources, rather than the $20,629.99 listed in Debtors' schedules. *Id.* at 5.

Debtors now move for an Order granting summary judgment against SWH. A.P. Dckt. No. 25.

## CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56(b), made applicable to adversary proceedings by Bankruptcy Rule 7056, governs motions for summary judgment. The moving party bears the burden to prove that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986). A court may grant summary judgment "where the material facts concerning a claim cannot reasonably be disputed." <u>Schechter v. Ga. State. Univ.</u>, 341 Fed.Appx. 560, 563 (11th Cir. 2009). A fact is "material" if it might affect the outcome of the case. <u>FindWhat Investor Group v. FindWhat.com</u>, 658 F.3d 1282, 1307 (11th Cir. 2011). In determining whether the movant has met its burden, the Court must examine the evidence and make all reasonable inferences in favor of the opponent. *In re* <u>Pony Express Delivery Services, Inc.</u>, 440 F.3d 1296, 1300 (11th Cir. 2006).

The essence of the relief sought by SWH in its Complaint is (1) a determination of the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6), and (2) denial

of discharge pursuant to 11 U.S.C. § 727(a)(4). Debtors ask the Court to grant summary judgment against SWH as to both of these claims.

I. Dischargeability of Debt under § 523(a)(6)

Debtors move for summary judgment as to SWH's § 523(a)(6) claim. Debtors argue that (1) the transfer of assets to Port City Logistics was a corporate act, and therefore the act of Kevin Jaynes's company cannot be the basis for an objection under § 523 to the dischargeability of the debts of the individual, Kevin Jaynes; (2) because SWH failed to perfect its security interest in the collateral, confusion surrounded the status of the collateral, and thus Debtors' subsequent sale of the assets was not done willfully or with the deliberate intent to damage or injure SWH; and (3) the relationship between the Debtors and SWH's owners, as well as at least one of SWH's owners' knowledge of the operations of Arrow of South Carolina "justified the reasonable inference on the part of Arrow of South Carolina that their disposition of assets allegedly secured to [SWH] was permissible and that [SWH] had, in fact, released any interests in said property." Defendants' Statement of the Case, A.P. Dckt. No. 44 at 3.

Conversely, SWH argues that Kevin Jaynes can be held personally liable for acts he did in his corporate capacity. SWH's Brief, A.P. Dckt. No. 45 at 6. Additionally, SWH asserts that a security interest attaches by contract, and that perfection of a security interest only affects the rights of subsequent purchasers or lienholders taking without notice

7

of the prior interest. *Id.* at 7-8. Therefore, SWH argues, its failure to perfect its security interest does not impair its § 523(a)(6) claim. Finally, SWH adamantly avers that no permission or implication of consent was present here. *Id.* at 8. In Kevin Jaynes's deposition he stated that he had not gotten permission from SWH to sell the assets of Arrow of South Carolina to Port City. K. Jaynes Deposition, A.P. Dckt. No. 48 at 28. Additionally, though Debtors attribute the knowledge and consent of SWH to the transfer to Henry Smith, Sr., Mr. Smith denies knowing and consenting to the transfers. H.Smith, Sr. Deposition, A.P. Dckt. No. 31 at 44.

11 U.S.C. § 523(a)(6) states, in relevant part, that "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." This Court has held that an injury is willful and malicious if (1) the action of the debtor was deliberate as opposed to accidental; and (2) the debtor intended the consequences of the act. *In re* LaGrone, 230 B.R. 900, 904 (Bankr. S.D. Ga. 1999) (Davis, J.). Intent can be proved be showing either subjective intent to injure or an objective substantial certainty that harm would result. *Id.* Negligent or reckless acts interfering with a creditor's interests in property are insufficient to establish a willful and malicious injury. *Id.* at 903-04 (citing Davis v. Aetna Acceptance Co., 293 U.S. 326, 332 (1934)).

Without delving too deeply into each argument made by the parties, it is

clear that at least one genuine dispute of fact exists here. The standard for determining whether an injury is willful and malicious requires an assessment of whether Debtors' actions were deliberate and intentional, a question of fact. *Cf.* Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1356 (Fed. Cir. 2001) ("'[W]illful' action is quintessentially a question of fact, for it depends on findings of culpable intent and deliberate or negligent wrongdoing."). Such an inquiry is difficult to determine on summary judgment because it necessarily probes into Debtors' states of mind, and "[e]valuating state of mind often requires the Court to draw inferences from the conduct of parties about which reasonable persons might differ." *In re* Glenn, 470 B.R. 731, 738 (Bankr. M.D. Pa. 2012). Therefore, the Court must exercise caution in determining whether summary judgment should be granted here. Hammer v. Slater, 20 F.3d 1137, 1144 (11th Cir. 1994) (summary judgment should be granted with caution when questions of intent or motive are present); *In re* Varrasso, 37 F.3d 760, 764 (1st Cir. 1994) (courts must be exceptionally cautious in granting summary judgment where issues involving a party's state of mind are present); Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 321 (3d Cir. 2000) (trial court must be cautious about granting summary judgment when intent is at issue); *In re* Blunt, 183 B.R. 302, 305 (Bankr. M.D. Fla. 1995) ("Intent is a question of fact which cannot be decided on a summary judgment motion.").

Here, there is a genuine dispute of fact as to whether Debtors intended the injury to SWH or whether the injury was substantially certain to occur as a result of Debtors'

actions. Debtors contend that due to the close relationship between the parties, SWH had knowledge of and, in effect, consented to the sale of the collateral or at least released its interest in the collateral. If that were the case, whether any injury was substantially certain to occur would be in doubt. SWH, on the other hand, asserts that it had no knowledge, did not release its interest in the collateral, and did not convey consent. This dispute of fact is material as to whether Debtors intended to injure SWH or whether the injury was substantially certain to result from the Debtors' sale of the collateral to Port City, which is a necessary element in a finding of willful and malicious injury.

Viewing the facts in a light favorable to SWH, the Court concludes that there is a genuine dispute of material fact with regard to the § 523 claim, and thus the Court must deny summary judgment as to this claim.

II. Objection to Discharge under § 727

Debtors also move for summary judgment as to SWH's § 727 claim. Debtors assert that any errors in the schedules were simply oversights and not made with any intent to defraud the Court. Debtor's Brief, A.P. Dckt. No. 26 at 13. Debtors explain that during the time of the bankruptcy petition they were under considerable strain with the process of winding down the operations of both Arrow of South Carolina and A-1. *Id.* Debtors argue that the errors and omissions on the schedules were committed inadvertently and without any intent to deceive either the Court or creditors. Defendants' Statement of the Case, A.P. Dckt.

No. 44 at 4. Debtors state that initially they failed to notate the family's books, pictures, and art under Item 5 on Exhibit B, and that they failed to identify an inoperable golf cart on the same schedule. The remaining missing items were not owned by Debtors at the time of filing, and Debtors assert that no additional assets for the benefit of creditors have been identified as a result of SWH's adversary proceeding. *Id.* Debtors amended their schedules to correct these errors. Dckt. No. 54.

SWH argues that the errors and omissions were material, and that the amendments do not cure the original errors and omissions for purposes of 11 U.S.C. § 727. SWH's Brief, A.P. Dckt. No. 45 at 3. In addition to the failure to list certain assets on Debtors' schedules, SWH asserts that Debtors' Current Monthly Income Details Form states that Debtors had a gross income of $20,629.99 in the six months preceding bankruptcy, but that Debtors had actually received $151,567.29 from various sources. *See id.* at 5, Exh. A4, A6-A7, B1-B3, D1-11. SWH also argues that Debtors are still withholding information from the Court by refusing to disclose certain bank account numbers in their amended schedules. *Id.* at 9. Similarly, SWH points to four additional undisclosed bank accounts that were not included in Debtors' initial or amended schedules. *Id.* at 5. Debtors have not fully responded to these allegations.

> 11 U.S.C. § 727(a)(4) states:
>
> The court shall grant the debtor a discharge unless the debtor knowingly and fraudulently, in or in connection

> with the case–
>
>> (A) made a false oath or account;
>> (B) presented or used a false claim;
>> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

This Court has stated that "[a] false statement in a debtor's schedules is sufficient ground for denial of discharge under § 727 if the statement was material and knowingly made with fraudulent intent." Sanders v. Sanders (*In re* Sanders), Adversary Proceeding No. 98-4195 (Bankr. S.D. Ga. February 7, 2000) (Davis, J.). The Court must find that the omission was deliberate rather than an honest mistake, but a series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. *Id.*

Debtors have not fully addressed the most recent omissions alleged by SWH in its "Response to Defendant's Statement of Material Facts" and "Brief in Opposition to Defendants' Motion for Summary Judgment" regarding Debtors' income and bank statements. Accordingly, a genuine dispute of material fact exists here, as those additional allegations, if true, might present potentially dispositive evidence as to whether there has

been a series or pattern of errors or omissions to give rise to an inference of intent to deceive. Furthermore, as explained *supra*, because intent is relevant to the Court's analysis, the Court must be cautious of granting summary judgment in this matter. The necessity of an intent analysis, coupled with the possibility of a series or pattern of errors or omissions, forces the Court to conclude that it cannot grant summary judgment at this time.

After consideration of the record in this case, and viewing the evidence in a favorable light to SWH, the nonmoving party, the Court denies Debtors' Motion for Summary Judgment as to SWH's § 727 action. The Court finds that there are genuine disputes of material fact with respect to this claim.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Debtors' Motion for Summary Judgment is DENIED.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 15th day of January, 2013.